**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| RODA DRILLING COMPANY; RODA LLC; ROLAND ARNALL; DAWN ARNALL; and THE ROLAND AND DAWN ARNALL LIVING TRUST,<br><br>                              Plaintiff,<br><br>vs.<br><br>RICHARD SIEGAL, an individual; BIPPY SIEGAL, an individual, PALACE EXPLORATION COMPANY, a corporation; PALACE OPERATING COMPANY, a corporation; B&R EXPLORATION CO., INC.; BISTATE OIL MANAGEMENT CORPORATION; and OIL AND GAS TITLE HOLDING CORPORATION,<br><br>                              Defendant. | Case No. 07-CV-400-GFK-FHM |

## CORRECTED PRELIMINARY INJUNCTION[1]

Plaintiffs' Motion for Preliminary Injunction [Dkt. 42] and Plaintiffs' Motion for Emergency Interim Relief [Dkt. 51] are before the undersigned United States Magistrate Judge for decision. The parties have consented to the jurisdiction of a United States Magistrate Judge to resolve these motions under the terms of 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, and LCvR 73.1. [Dkt. 69]. The undersigned has conducted an evidentiary hearing, the matters have been fully briefed, and the parties have submitted proposed findings of fact and conclusions of law. The matter is therefore ripe for decision.

---

[1] The Court entered a Preliminary Injunction in this case on July 23, 2008. [Dkt. 168]. In the process of considering Defendants' Motion for Immediate Stay of Preliminary Injunction, the Court recognized that corrections should be made to paragraph 19 of the Findings of Fact and to paragraphs 2, 10 and 19 of the Conclusions of Law. Additionally, paragraphs 30 and 31 of the Conclusions of Law are renumbered as 28 and 29. Pursuant to its authority under Fed.R.Civ.P. 62(c) to modify an injunction during the pendency of an appeal, the Court has corrected the Preliminary Injunction. The corrections do not affect the actions to be taken by Defendants and the Corrected Preliminary Injunction specifically recites that it is effective as of July 23, 2008. The corrections are underlined in the Corrected Preliminary Injunction for ease of reference.

Plaintiffs' Motion for Preliminary Injunction [Dkt. 42] is hereby GRANTED as set out herein.  Plaintiffs' Motion for Emergency Interim Relief [Dkt. 51] is DENIED, as moot.

### Findings of Fact[2]

1. In April 2002, Plaintiffs and Defendant[3] met for the first time.  The purpose of the meeting was for Defendant to explain a potential investment opportunity to Plaintiffs.  Defendant explained that he had been successfully helping wealthy individuals invest in oil and gas properties for many years and that there were opportunities for Plaintiffs to purchase oil and gas properties which would generate substantial returns and also generate substantial tax deductions for Plaintiffs in the form of intangible drilling costs.  After several conversations, the parties agreed on a program for Plaintiffs to purchase oil and gas properties.

2. The program as agreed to by the parties was that Plaintiffs would provide funds to Defendant for Defendant to purchase oil and gas properties for Plaintiffs.  Defendant would select the oil and gas properties to be purchased and would manage and develop the properties once they were purchased.  To benefit from Defendant's reputation in the marketplace, the properties would be held in Defendant's name, but title to the properties would be transferred to Plaintiffs on request.  Plaintiffs would receive the revenues generated by the properties.  As compensation to Defendant and as part of the intangible drilling costs of the properties, Plaintiffs agreed to pay Defendant an amount in addition to the money Plaintiffs spent to purchase the properties.  This obligation was referred to as

---

[2] Any finding of fact which is more properly termed as a conclusion of law shall be considered as a conclusion of law.

[3] For the sake of simplicity, throughout this Preliminary Injunction, Plaintiffs are referred to as "Plaintiffs," Defendants are referred to as "Defendant."

2

Plaintiffs' note obligations. The note obligations support Plaintiffs' tax deduction for the intangible drilling costs.

3. In May 2002, the parties implemented the program as set forth in Finding of Fact No. 2. The agreement was not committed to writing and signed by the parties before the program began and has never been committed to writing and signed by the parties.

4. Since May 2002, Plaintiffs have spent substantial amounts of money to purchase, maintain and develop Plaintiffs' oil and gas properties through Defendant. All of the money to purchase, maintain and develop Plaintiffs' oil and gas properties came from Plaintiffs. None of the money came from Defendant.

5. Defendant has held Plaintiffs' oil and gas properties in Defendant's name and has managed and developed the properties on Plaintiffs' behalf.

6. Plaintiffs have received revenues and re-invested revenues from Plaintiffs' oil and gas properties.

7. Plaintiffs have made substantial payments to Defendant on the note obligations. The note obligations were not committed to writing and signed by the parties.

8. Plaintiffs have claimed substantial tax deductions for the intangible drilling costs which are supported by the note obligations.

9. Plaintiffs did not grant Defendant any interest in Plaintiffs' oil and gas properties. The record does not support Defendant's argument that Defendant has a security interest or chattel mortgage on Plaintiffs' oil and gas properties. Defendant offered no testimony of any such interest at the hearing. The draft turnkey drilling contracts relied upon by Defendant as support for a security interest in Plaintiffs' oil and gas properties are not signed by Plaintiffs.

10. Plaintiffs are the owners of the Plaintiffs' oil and gas properties, free and clear of any claim or security interest by Defendant.

11. Under the agreement between the parties, the transfer of title to Plaintiffs' oil and gas properties from Defendant to Plaintiffs was not conditioned on Plaintiffs' payment of the note obligations.

12. Defendant has twice begun the process of transferring record title to Plaintiffs' oil and gas properties from Defendant to Plaintiffs but the process has not been completed.

During early 2004, Plaintiffs undertook efforts to obtain record title to Plaintiffs' oil and gas properties. The Plaintiffs' accountant specifically discussed the transfer of title with Defendant in 2004. At no time did Defendant state that he would not execute assignments transferring record title to Plaintiffs. Nor did Defendant condition assignment on the payment of the note obligations. During 2004, Defendant prepared, executed and delivered assignments to Plaintiffs for a number of Plaintiffs' oil and gas properties. Plaintiffs did not record those assignments because they provided for Defendant to retain an overriding royalty interest in the properties. Defendant previously agreed that no overriding royalty interest would be retained on Plaintiffs' oil and gas properties.

In early to mid-2006, Defendant instructed one of the operators for a number of Plaintiffs' oil and gas properties to prepare assignments from Defendant to Plaintiffs. Those assignments were not completed because the information Defendant provided was inconsistent as to the specific interests to be assigned to Plaintiffs. When questioned, a representative for Defendant said Defendant had not thought about those issues and would have to get back to the operator regarding the assignments. Subsequently, Defendant instructed the operator to discontinue the assignment process.

Additionally, Defendant executed and delivered to Plaintiffs a proposed form of prospect agreement in September 2004. Among other things, the prospect agreement executed by Defendant provided that Defendant would hold legal title to the properties in trust for Plaintiffs as Plaintiffs' nominee and would execute and deliver to Plaintiffs upon thirty days' written notice at any time after January 1, 2004, "All documents, in recordable form, necessary to convey good and marketable legal title" to the interests acquired by Plaintiffs during 2002.

13.  As of this date, Defendant has refused to transfer record title to Plaintiffs' oil and gas properties from Defendant to Plaintiffs despite Plaintiffs' repeated requests.

14.  As record title owner of Plaintiffs' oil and gas properties Defendant receives all revenues generated by Plaintiffs oil and gas properties; receives all notices regarding Plaintiffs' oil and gas properties; and exercises all of the owner's rights regarding Plaintiffs' oil and gas properties.

15.  Defendant is currently retaining a substantial amount each month from the revenues generated by Plaintiffs' oil and gas properties as payment on Plaintiffs' note obligations.

16.  In 2006 the Internal Revenue Service began an audit of Plaintiffs' tax returns which focuses on Plaintiffs' deductions of intangible drilling costs related to Plaintiffs' oil and gas properties.

17.  The fact that Plaintiffs do not have record title to Plaintiffs' oil and gas properties creates an issue against Plaintiffs in the IRS audit.

18.  Plaintiffs now dispute their obligation to continue paying on the note obligations. The Court is not making any findings on that issue.

19. Plaintiffs are irreparably damaged by Defendant holding record title to Plaintiffs' oil and gas properties. The ownership, maintenance and development of oil and gas properties is not a passive endeavor. It is an active process requiring regular and ongoing decisions which affect the value of the properties. Plaintiffs spend a substantial amount each year for maintenance and development and will be required to do so in the future. Decisions concerning Plaintiffs' oil and gas properties must be made on a variety of topics: whether to drill or propose to drill additional wells; proposals by others who own interests in the prospects; decisions under joint operating agreements; and numerous other subjects, including if and when to sell the properties and on what terms. Because Defendant is the record owner of Plaintiffs' oil and gas properties, third parties look to Defendant to make those decisions.

Plaintiff's efforts to make decisions through Defendant have proved unworkable. Third parties have refused to negotiate directly with Plaintiff about the sale of a substantial part of Plaintiffs' oil and gas properties and have thereby forced Plaintiffs to negotiate the sale through Defendant. Similar problems have delayed potential farm-outs. Defendant does not have the necessary staff to maintain and develop Plaintiffs' oil and gas properties. Defendant relies on the staff of the operators of the properties to help maintain and develop Plaintiffs' oil and gas properties. However, Plaintiffs' interests are not the same as the operators and may even be adverse to them. Moreover, Defendant's relationship with the operator of a large number of Plaintiffs' oil and gas properties has deteriorated with serious disputes occurring about office space and a change of insurance agents. There have also been missed elections, forfeited production and untimely farm-out attempts.

Because Plaintiffs do not hold title to Plaintiffs' oil and gas properties Plaintiffs have been unable to use the properties to obtain financing for maintenance and development. Because Defendant holds title to Plaintiffs' oil and gas properties, circumstances related only to Defendant may operate to encumber Plaintiffs' oil and gas properties or place the properties beyond Plaintiffs' ability to recover them.

In the current situation, Plaintiffs are suffering ongoing irreparable harm because they do not hold title to the properties which they indisputably own. However, it will be practically impossible for Plaintiffs to prove the amount of damages they have suffered as a result of Defendant's continued holding of record title because it will be difficult or impossible to prove the opportunities they lost. Therefore money damages are inadequate to fully compensate Plaintiffs.

20. The parties met in mid-to-late 2006 and in 2007 to attempt to resolve their disputes. In September 2007, after the filing of this lawsuit and prior to filing the motion for preliminary injunction, the parties met in an unsuccessful attempt to resolve the matter.

21. The record does not establish that Defendant would be harmed in any way by the transfer of title to Plaintiffs' oil and gas properties from Defendant to Plaintiffs.

Defendant's argument that Defendant would be harmed by not receiving monthly payments on the note obligations does not establish harm because the validity of the note obligations is in dispute. Moreover, even assuming the validity of the note obligations, there is no evidence of the terms of the note obligations. The note obligations, if valid, are completely unrelated to the ownership of Plaintiffs' oil and gas properties. The note obligations were not a loan Plaintiffs used to purchase the properties.

Defendant's argument that if Plaintiffs have title to Plaintiffs' oil and gas properties Plaintiffs may sell the properties or otherwise make them unavailable to satisfy the note obligations does not establish a cognizable harm to Defendant.  The properties are owned by Plaintiffs and the parties never  agreed that the properties would serve as collateral on Plaintiffs' note obligations.  Defendant's inability to employ self-help to hold title to Plaintiffs' oil and gas properties as security to pay a *potential* judgment against Plaintiffs on the note obligations is simply not a harm recognized by the law.

## Conclusions of Law[4]

### Preliminary Injunction Standards

1.  A preliminary injunction is an extraordinary remedy, therefore the right to relief must be "clear and unequivocal."  *Schrier v. University of Colorado*, 427 F.3d 1253, 1258 (10th Cir. 2005)(citing *SCFC ILC, Inc. v. VISA USA, Inc.,* 936 F.2d 1096, 1098 (10th Dir. 1991)).  In order to be entitled to a preliminary injunction, the party seeking the injunction must establish each of the following:  1) a substantial likelihood of prevailing on the merits; 2) irreparable harm unless the injunction is issued; 3) the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and 4) the injunction, if issued, will not adversely affect the public interest.  *Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190, 1194 (10th Cir. 1999).

2. Courts have identified three types of preliminary injunctions that are considered to be disfavored: 1) preliminary injunctions that alter the status quo; 2) are mandatory rather than prohibitory; or 3) provide movant substantially all the relief it could feasibly

---

[4] Any conclusion of law which is more properly termed as a conclusion of law shall be considered as a finding of fact .

8

obtain after a full trial on the merits. *Schrier,* 427 F.3d at 1258-59. When an injunction is one of the disfavored types, the injunction "must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004).

    3. An injunction is characterized as "mandatory" if the requested relief "'affirmatively require[s] the nonmovant to act in a particular way, and as a result . . . place[s] the issuing court in a position where it may have to provide ongoing supervision to assure the nonmovant is abiding by the injunction.'" *Schrier*, 427 F.3d at 1261 (quoting *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (alterations in original).

    4. The requested injunction would require Defendant to take affirmative steps to transfer record title to Plaintiffs' oil and gas properties to Plaintiffs. The parties agree, and the Court finds, that the requested injunction is properly characterized as a mandatory injunction. Therefore, the Court has more closely scrutinized the foregoing factors to assure that the exigencies of the case support the granting of a preliminary injunction.

**Analysis of Factors**

<u>Likelihood of Success</u>

    5. Although Plaintiffs have asserted several claims against Defendant, Plaintiffs are not required to establish a likelihood of success on every one of their claims for a preliminary injunction to issue. Plaintiffs are required only to establish likelihood of success on the claim that would result in the transfer of record title to them. *See Eve of Milady v. Impression Bridal, Inc.,* 957 F.Supp 484, 487 (S.D.N.Y. 1997)("Where a plaintiff seeks a

preliminary injunction and asserts multiple claims upon which the relief may be granted, the plaintiff need only establish a likelihood of success on the merits of one of the claims"). Therefore the analysis is properly focused solely on whether Defendant's failure to transfer record title constitutes a breach of contract or breach of fiduciary duty. The Court does not make any findings on any of the parties' other claims.

6. The parties agree, and the Court finds, that New York law applies to the question of breach of contract and fiduciary duties.

7. To prevail on a claim for breach of contract under New York law, a plaintiff must prove the following elements: 1) the plaintiff had an agreement with the defendant; 2) the plaintiff performed in accordance with that agreement; 3) the defendant breached the agreement; and 4) as a result of the defendant's breach, the plaintiff suffered damages. *First Investors Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162, 168 (2nd Cir. 1998).

8. The Court holds that Plaintiffs and Defendant entered into a series of oral agreements relating to Plaintiffs' purchase of oil and gas properties. As set forth in the Findings of Fact, Plaintiffs agreed to purchase oil and gas properties through Defendant and to allow record title to the oil and gas properties they were acquiring to be held in Defendant's name, on behalf of Plaintiffs. In exchange, Defendant agreed, among other things, that record title to Plaintiffs' oil and gas properties would be held for Plaintiffs' interest and benefit, and that record title to Plaintiffs' oil and gas properties would be transferred to Plaintiffs upon request by Plaintiffs. Plaintiffs also agreed to note obligations that would serve as Defendant's compensation and a component of the intangible drilling costs.

9. Plaintiffs performed under this agreement by purchasing oil and gas properties through Defendant and permitting record title to the properties they purchased to be held in the name of Defendant.

10. <u>Plaintiffs have shown a substantial likelihood that they will prevail on their claim that</u> Defendant breached the agreement by refusing to transfer record title to the properties to Plaintiffs upon Plaintiffs' request.

11. The Court rejects Defendant's contention that Plaintiffs cannot prevail on the breach of contract claim because they have not performed under the agreement by failing to fully pay the note obligations. There was no evidence that payment of the note obligations was a condition to transfer of title. Further, there was no evidence of any agreement between the parties as to when payments on the notes were due, nor was there any evidence of any schedule of amounts to be paid. Moreover, since Plaintiffs paid all of the money to purchase the oil and gas properties and the note obligations were not any part of the purchase price of the properties, even if the note obligations are found to be valid obligations, Plaintiffs' failure to pay those obligations could never result in Defendant obtaining title to the property. The most that Defendant may obtain on the note obligations at the conclusion of a trial on the merits is a money judgment against Plaintiffs. The Court finds that Defendant's retention of title to Plaintiffs' oil and gas properties is tantamount to an unauthorized form of self-help to hold Plaintiffs' oil and gas properties as security to pay a *potential* judgment against Plaintiffs on the note obligations.

12. The Court concludes that as a result of Defendant's refusal to transfer record title upon Plaintiffs' repeated requests, Plaintiffs have suffered damages as set forth in the findings of fact.

13. The Court concludes that Plaintiffs have shown a substantial likelihood of success on the merits of their breach of contract claim.

14. Under New York law, a fiduciary relationship is one "'founded upon trust or confidence reposed by one person in the integrity and fidelity of another . . . .'" *Henneberry v. Sumitomo Corp.*, 532 F.Supp.2d 523, 550 (S.D.N.Y. 2007)(quoting *Penato v. George*, 383 N.Y.S.2d 900, 904 (N.Y. A.D. 1976)) (omission in original). Typically, an arms-length transaction does not give rise to a fiduciary relationship. *Id.* at 550-51. However, a fiduciary relationship exists where a party "transacts business or handles money or property for the benefit of another person." *Greenspan v. Allstate Ins. Co.*, 937 F.Supp. 288, 294 (S.D.N.Y. 1996) (citing *Board of Managers v. Fairway at North Hills*, 603 N.Y.S.2d 867, 869 (N.Y.A.D. 1993)).

15. A fiduciary relationship exists between the parties. Defendant was given discretion in using Plaintiffs' money to purchase, maintain and develop Plaintiffs' oil and gas properties. Defendant was also entrusted with legal title to Plaintiffs' oil and gas properties purchased and beneficially owned by Plaintiffs with the agreement that Defendant would transfer title to Plaintiffs' oil and gas properties to Plaintiffs upon request.

16. Under New York law:

> a fiduciary is obliged to exercise the highest degree of good faith, honesty, integrity, fairness and fidelity in its dealings with those to whom the duty is owed. It is elemental that a fiduciary owes a duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect. Once a fiduciary duty is established, it is so inflexible that the fiduciary must avoid not only self-dealing, but also situations in which a fiduciary's personal interest possibly conflicts with the interest of those owed a fiduciary duty.

*Manhattan Motorcars, Inc. v. Automobili Lamborghini*, 244 F.R.D. 204, 215 (S.D.N.Y 2007)(internal quotations and further citation omitted); *see also* 2A N.Y. Jur.2d *Agency* §§ 204, 206, 207, 212, and 215.

17. As a fiduciary, Defendant was under a duty to act for the benefit of Plaintiffs in making decisions regarding the oil and gas properties purchased with Plaintiffs' money.

18. Under New York law, a breach of fiduciary duty claim requires: 1) the existence of a fiduciary duty between the parties; 2) a breach of the duty flowing from that relationship; and 3) damages. *Henneberry,* 532 F.Supp.2d at 550; *Manhattan Motorcars, Inc.,* 244 F.R.D. at 214.

19. The Court concludes that <u>Plaintiffs have shown a substantial likelihood of success on the merits of their claim that</u> Defendant breached the fiduciary duties owed to Plaintiffs by refusing to transfer record title to Plaintiffs' oil and gas properties to Plaintiffs upon their request. <u>There is a substantial likelihood that Plaintiffs will prevail on their claim that</u> continuing to hold record title to Plaintiffs' oil and gas properties in the face of their request for transfer of title on the claim that Defendant is protecting a security interest that the parties did not agree to enter into is a breach of Defendant's fiduciary duty. The Court does not <u>address Plaintiffs'</u> <u>clams that</u> Defendant breached the fiduciary duty in any other respect.

20. The Court concludes that Plaintiffs are damaged by Defendant's breach of the fiduciary duty owed Plaintiffs as set forth in the findings of fact.

### Irreparable Harm

21. The oil and gas working properties beneficially owned by Plaintiffs constitute interests in real property. *See De Mik v. Cargill*, 485 P.2d 229, 232 (Okla. 1971); *Rogers*

13

*v. Ricane Enters., Inc.,* 772 S.W. 2d 76, 80 (Tex. 1989). Defendant's refusal to transfer to Plaintiffs title to their oil and gas properties deprives Plaintiffs of their interest in real property.

22. The Court finds that depriving Plaintiffs of their title to and control of their real property constitutes irreparable harm to Plaintiffs as set forth in the findings of fact. *See Varsames v. Palazzolo*, 96 F.Supp.2d 361, 367 (S.D. N.Y. 2000)(where a plaintiff is denied ownership and control of its property, the plaintiff is "deprived of the ability to make productive use of [its] own property. This deprivation rises to the level of irreparable injury"). *Southland Corp. v. Froelich*, 41 F.Supp.2d 227, 242 (E.D.N.Y. 1999)(a real property owner's inability to make productive use of its property may constitute irreparable harm).

23. The Court rejects Defendant's contention that Plaintiffs' delay in seeking a preliminary injunction necessarily precludes a finding of irreparable harm. Plaintiffs' delay is a factor the Court considered in determining whether irreparable harm has been proven, but it is not dispositive of that issue. *Kan. Health Care Ass'n, Inc. v. Kan. Dep't of Soc. & Rehab. Servs.*, 31 F.3d 1536, 1543-44 (10th Cir. 1994).

24. The Court finds that Plaintiffs' delay in seeking a preliminary injunction is not unreasonable as it is attributable to Plaintiffs' efforts to resolve the dispute.

25. Defendant has not suffered any harm as a result of Plaintiffs' delay in seeking a preliminary injunction.

26. The Court finds that any delay by Plaintiffs in seeking their requested relief does not alter the conclusion that Plaintiffs are irreparably harmed as set forth in the findings of fact.

### Balance of Harm

27. The Court finds that the irreparable injury to Plaintiffs which attends being denied title to the subject properties far outweighs any harm the proposed injunction may cause Defendant. Defendant holds record title to Plaintiffs' oil and gas properties as the agent or nominee of Plaintiffs and has no real claim to ownership of the properties. Since the parties did not agree that Defendant would have a security interest in the subject properties, Defendant is not harmed by the entry of a proposed injunction that requires transfer of title to Plaintiffs' oil and gas properties to Plaintiffs.

### Public Interest

28. The public has a general interest in seeing that contract and property rights are enforced. Aside from that general interest, the particular dispute between the parties does not impact the public interest. The Court concludes therefore that the proposed preliminary injunction is not adverse to the public interest.

### **Security for Injunction**

29. Fed.R.Civ.P. 65(c) provides in relevant part:

> (c) Security
> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The Tenth Circuit has held that "a trial court has 'wide discretion' under Rule 65(c) in determining whether to require security." *Winnebago Tribe of Nebraska v. Stovall*, 341 F.3d 1202, 1206 (10th Cir. 2003)(quoting *Continental Oil Co. v. Frontier Refining Co.,* 338 F.2d 780, 782 (10th Cir. 1964)); *see also Dominion Video Satellite, Inc. v. Echostar Satellite*

*Corp.*, 269 F.3d 1149, 1158 (10th Cir. 2001)(same).  The trial court is required to make specific findings of fact to support a conclusion that no security is required because of an absence of proof showing a likelihood of harm.  *Winnebago Tribe*, 341 F.3d at 1206.

Based on the finding that Defendant has no ownership interest or security interest in Plaintiffs' oil and gas properties and therefore no right to continue to hold title to Plaintiffs' oil and gas properties and consequently no possibility of obtaining title to the oil and gas properties at the end of this litigation, the Court concludes that Defendant will not suffer any harm as a result of entry of a preliminary injunction which requires Defendant to transfer title to Plaintiffs' oil and gas properties to Plaintiffs.  The Court therefore concludes that it is not necessary for Plaintiffs to give any security for the entry of the preliminary injunction.

## **CONCLUSION**

The issue before the Court is which party should hold title to Plaintiffs' oil and gas properties while the parties litigate their claims.  The properties belong to Plaintiffs. Plaintiffs paid all of the money to purchase the properties.  The properties were held in Defendant's name only to benefit from Defendant's reputation in the marketplace with the specific promise by Defendant to transfer title to Plaintiffs' oil and gas properties to Plaintiffs on request.  Defendant has no ownership or security interest in the properties.

The Court concludes that the Plaintiffs, as owners of the oil and gas properties, are entitled to hold title to their own properties.

**IT IS THEREFORE ORDERED that:**

Plaintiffs' Motion for Preliminary Injunction [Dkt. 42 ]is hereby GRANTED.

The Defendants Richard Siegal, Bippy Siegal, Palace Exploration Company, Palace Operating Company, B&R Exploration Co., Inc., Bistate Oil Management Corporation, and

Oil and Gas Title Holding Corporation are hereby ordered to immediately take all necessary actions to transfer record title to Plaintiffs of all interests, properties and assets, tangible and intangible, beneficially held by Defendants for Plaintiffs. Defendants are further ordered to complete the process of transferring record title of all interests, properties and assets, tangible and intangible, beneficially held by Defendants for Plaintiffs to Plaintiffs in an expeditious manner.

From the July 23, 2008, effective date of this Preliminary Injunction pending Defendants' transfer of record title of all interests, properties and assets, tangible and intangible, beneficially held by Defendants for Plaintiffs to Plaintiffs, Defendants are hereby enjoined from transferring or encumbering in any way, without Plaintiffs' written consent to the terms and conditions thereof and to the disposition of any proceeds therefrom, title to any of the interests, properties or assets, whether tangible or intangible, beneficially held by Defendants for Plaintiffs.

From the July 23, 2008, effective date of this Preliminary Injunction, pending Defendants' transfer of record title of all interests, properties and assets, tangible and intangible, beneficially held by Defendants for Plaintiffs to Plaintiffs, Defendants are hereby ordered to turn over to Plaintiffs all funds, proceeds and operating revenues attributable to any of the interests, properties or assets, whether tangible or intangible, beneficially held by Defendants for Plaintiffs.

From the July 23, 2008, effective date of this Preliminary Injunction, pending Defendants' transfer of record title of all interests, properties and assets, tangible and intangible, beneficially held by Defendants for Plaintiffs to Plaintiffs, Defendants are hereby enjoined from withholding and failing to distribute to Plaintiffs any funds, proceeds and

operating revenues attributable to any of the interests, properties or assets, whether tangible or intangible, beneficially held by Defendants for Plaintiffs.

Plaintiffs' Motion for Emergency Interim Relief [Dkt. 51] is DENIED as moot.

SO ORDERED this 11th day of August, 2008.

*Frank H. McCarthy*

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE