# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RODA DRILLING COMPANY; RODA LLC; ROLAND ARNALL; DAWN ARNALL; and THE ROLAND AND DAWN ARNALL LIVING TRUST,<br><br>     Plaintiff,<br><br>vs.<br><br>RICHARD SIEGAL, an individual; BIPPY SIEGAL, an individual, PALACE EXPLORATION COMPANY, a corporation; PALACE OPERATING COMPANY, a corporation; B&R EXPLORATION CO., INC.; BISTATE OIL MANAGEMENT CORPORATION; and OIL AND GAS TITLE HOLDING CORPORATION,<br><br>     Defendant. | Case No. 07-CV-400-GFK-FHM |

## OPINION AND ORDER

The following motions have been referred to the undersigned United States Magistrate Judge for decision: Defendants' Amended Motions in Limine and to Preclude Expert Evidence [Dkt. 301]; Plaintiffs' Amended Motion in Limine [Dkt. 303]; Plaintiffs' Motion in Limine Regarding Tax Matters [Dkt. 307]; and Plaintiffs' Motion to Exclude the Expert Report and Testimony of Buck Willis [Dkt. 308]. The motions have been fully briefed and a hearing was held on June 16, 2009.

A motion in limine is a procedural device to obtain a ruling in advance of trial on the relevance of or unfair prejudicial effect of certain prospective evidence. Rulings on motions in limine are made without the benefit of the full development of evidence at trial and are therefore preliminary in nature and subject to being altered at trial. The following rulings

are made applying the concept that motions in limine are appropriately granted only when the evidence is plainly inadmissible on all potential grounds.  *See Metzger v. American Fidelity Assurance Company,* 2007 WL 4342082 (W.D. Okla, Dec. 7, 2007) (discussing preliminary nature of rulings on motions in limine).

**Defendants' Amended Motions in Limine
and to Preclude Expert Evidence [Dkt. 301]**

Defendants' Motion [Dkt. 301] is GRANTED in part and DENIED in part as set out below.

1. <u>Evidence of the Outcome of the Preliminary Injunction Hearing</u>

Defendants seek to preclude Plaintiffs from "offering evidence of the Magistrate Judge's ruling upon the preliminary injunction motion in this action." [Dkt. 307, p. 8].[1] Plaintiffs respond that they will not seek to introduce the preliminary injunction itself, but argue that some testimony about the fact the injunction was issued is necessary to dispel any impression that Defendants voluntarily transferred title to the properties.  Plaintiffs also contend that evidence of Defendants' delay in complying with the injunction is relevant to their punitive damage claim.  Defendants' motion in limine on this point is GRANTED in part and DENIED in part.

The court finds that evidence of the fact that Defendants did not transfer title to the oil and gas properties at issue until they were ordered to do so by the court is relevant to the breach of contract and breach of fiduciary duty claims.  Concise evidence of this fact

---

[1] All citations to the record reflect the page number assigned by the CM-ECF docketing system, since the CM-ECF system counts unnumbered cover pages and preliminary pages (i, ii, etc.) the docket reference may not necessarily be the same as the page number printed at the bottom of the document.

is admissible. Evidence of Defendants' alleged delay in complying with the injunction is not admissible.

The court views the litigation conduct of the parties as being distinct from issues regarding contractual performance. *See Timberlake Construction Co. v. U.S. Fidelity and Guaranty Co.*, 71 F.3d 335, 340 (10th Cir. 1995)(finding it was error for the district court to consider litigation steps as evidence of bad faith and that the Federal Rules of Civil Procedure provide adequate means of redress for litigation conduct). As a rule, litigation conduct is not relevant and therefore is not an appropriate topic for jury consideration. Therefore, the parties are precluded from introducing evidence about Defendants' compliance with the preliminary injunction order or other aspects of the conduct of the litigation.

2. Source of Funds used for Defendants' Side-by-Side Investment

Defendants seek to exclude evidence about the source of the funds Defendants used for investment in the oil and gas properties. Defendants' motion in limine on this point is DENIED.

Defendants' alleged promise to invest their own money in the oil and gas properties is an aspect of the agreement between the parties. Plaintiffs should have a fair opportunity to introduce evidence tending to show that the terms of the agreement were not as represented or were not met in execution of the contract. Conversely, Defendants should have a fair opportunity to demonstrate otherwise.

However, the court finds that the use of colloquial, slang and inflammatory characterizations such as the terms and phrases "ponzi scheme," "playing with house

money," and having "skin in the game" are potentially prejudicial to Defendant as such terms may imply wrongdoing separate from the alleged breach of the parties' agreement. Likewise, the court finds that the characterization of Defendants' handling of RoDa's investment money as "commingling" of funds has a pejorative connotation apart from the bare fact that the RoDa funds were not segregated from other funds. Therefore, unless these terms were used by the parties in the negotiation or implementation of the agreement, parties, counsel and witnesses are precluded from using these terms.

### 3. Evidence of Defendants' Lifestyle

Defendants assert that Plaintiffs should be precluded from offering evidence of Richard Siegal's lifestyle, such as his use of private planes and his ownership of a vacation home and other indicia of his wealth. In their motion in limine, Plaintiffs also seek to exclude evidence of their wealth. [Dkt. 303, p. 2]. The motions are GRANTED in part and DENIED in part on this point.

In general, gratuitous references to, or emphasis on, the wealth and lifestyle of the parties are not relevant and therefore are to be excluded. Counsel, witnesses, and parties are precluded from referring to the number of homes owned, cost of homes, number of household staff employed, any listing on the "Forbes 400," or making similar gratuitous references to wealth. However, the parties are not precluded from introducing otherwise relevant evidence that would tend to show wealth. Therefore if relevance and a proper foundation are established, documents such as the Kroll Report and the tax returns of the Arnalls are admissible even though they include information about the parties' wealth and lifestyles.

### 4. Evidence of Post-2002 Investor Disputes or Government Inquiries

Defendants seek to exclude "evidence of disputes that the Defendants have had with other investors aside from RoDa, or of regulatory inquiries into Defendants that took place after the Plaintiffs had commenced their investments." [Dkt. 301, p. 13]. In their reply brief, Defendants refer to "evidence of an ongoing civil suit involving Defendants and other investors, as well as evidence regarding a recent inquiry into Defendants' businesses." [Dkt. 395, p. 8]. From these descriptions, it is not clear what evidence Defendants seek to exclude. Likewise, Plaintiffs' have not specified what evidence they may seek to admit, although Plaintiffs do refer to Fed.R.Evid. 404(b). The court is unable to resolve such an ill-defined issue. At the hearing both parties agreed that a pre-trial notice requirement for Rule 404(b) evidence would serve to define these issues. The motion is DENIED on this point.

It is therefore ORDERED that by July 17, 2009, the parties shall provide written notice of any evidence of post-2002 investor disputes, government inquiries, or any other Rule 404(b) type evidence they intend to offer at trial. Whereas Fed.R.Evid. 404(b) requires only notice of the general nature of evidence sought to be introduced, the notice required herein shall be sufficiently detailed to enable the court to address the admissibility of the evidence.Motions in limine concerning such evidence may be filed by July 24, 2009 with responses to such motions due by July 31, 2009.

### 5. Require Appearance of Witness Philip Holthouse or Alternatively Grant an Adverse Inference for his Failure to Appear

Defendants assert that the Court should "order that Philip Holthouse, the Arnall's longtime tax consultant who specifically advised them on the propriety of their investment with Defendants, must appear as a live witness at trial." [Dkt. 301, p. 14]. Alternatively, Defendants assert that if the Court does not require Plaintiffs to produce Mr. Holthouse at trial, it should instruct the jury to "infer that the evidence is unfavorable to the party who could have produced it and did not." [Dkt. 301, p. 16]. Defendants' motion is DENIED on this point.

Defendants have not demonstrated that the court has the authority to require the presence of Mr. Holthouse at trial. As a nonparty who does not reside or work within the territorial jurisdiction of the court, Mr. Holthouse is beyond the subpoena power of the court. The request for an adverse inference is premature. The decision to grant an adverse inference should be made at trial under the circumstances presented at the time.

### 6. Witnesses Who Have Not Been Specifically Identified

This aspect of the motion is MOOT. The parties have agreed that only witnesses who have been specifically identified will be called to testify at trial.

### 7. Plaintiffs' Expert Evidence as to the Present Value of the Properties

Defendants challenge the admission of the expert reports of Plaintiffs' experts Jeffrey J. Leitzinger and David W. Wilson. The proposed testimony of these witnesses addresses Plaintiffs' alleged damages. Their reports make estimates of the value of Plaintiffs' properties as of January 2009. Defendants argue that the value of the properties

on January 2009 is not relevant because, based on applicable New York law, damages in a fraud case are measured by the difference between the consideration paid and the value of the property received as of the date of the sale or as of the date of discovery of the alleged fraud. [Dkt. 301, p. 20, 23]. Damages for a breach of contract are measured from the time of the breach. *Id.* at 23. Defendants assert that since Mrs. Arnall has testified that the alleged fraud was discovered in 2006 and since RoDa requested transfer of title in 2006, valuation of the properties at any time after 2006 is not relevant. Defendants' motion is DENIED on this point.

The undersigned is not persuaded that the measure of damages for breach of contract or for fraud is always as clear cut as Defendants suggest. The cases cited by Plaintiffs make it clear that the proper measure of damages must vary with the circumstances of the case and correspond to the loss sustained.

Defendants' bright line rules which fix damages based on either the time of the breach or discovery of the fraud are particularly inapplicable where, as here, a type of continuing breach is alleged. After the time of the alleged breach and after the date of discovering the alleged fraud, Defendants continued to wrongfully hold title to Plaintiffs' properties. Under these facts, the value of the properties at least up until the time they were transferred to Plaintiffs is relevant.

Furthermore, in addition to the fraud and breach of contract claims, Plaintiffs are also seeking damages for breach of fiduciary duty. Defendants did not cite authority to support their statement that the measure of damage for breach of fiduciary duty is the same as for breach of contract. [Dkt. 301, p. 24 n. 4].

The court has determined that Plaintiffs suffered a breach of fiduciary duty occasioned by Defendants' refusal to transfer title to the oil and gas properties. [Dkt. 403] According to the research of New York law performed by the undersigned, "[t]he measure of damages for breach of fiduciary duty is the amount of loss sustained, including lost opportunities for profit on the properties by reason of the faithless fiduciary's conduct." *105 East Second Street Assoc. v. Bobrow*, 176 A.D.2d 483. 573 N.Y.S.2d 503, 504 (1st Dept. 1991) (citing *E.W. Bruno Co. v. Friedberg*, 21 A.D.2d 336, 250 N.Y.S.2d 187). Furthermore, "a trial court may be accorded significant leeway in ascertaining a fair approximation of the loss where . . . a breach of fiduciary duty has been proved[.]" *Keizman v. Hershko*, 52 A.D.3d 204, 859 N.Y.S.2d 79, 80 (1st Dept. 2008). The undersigned does not intend the citation to the foregoing to be considered as a ruling about the proper measure of damages for breach of fiduciary duty. That issue has not been briefed. However, the foregoing authorities are a strong indication that evidence of the valuation of the oil and gas properties after 2006 is not irrelevant and should not be excluded before trial.

### 8. Testimony of Expert Witness Leitzinger

Defendants argue that the testimony of Plaintiffs' expert witness Jeffery J. Leitzinger should be excluded as unreliable because Mr. Leitzinger based his damages calculations on the value estimates provided by another expert witness, David L. Wilson. Defendants' motion is DENIED on this point.

David L. Wilson will also be testifying at trial. It is not uncommon or improper for an expert witness to base an opinion in part on information developed by another expert

testifying in the case. *See In re Williams Securities Litigation*, 496 F.Supp.2d 1195, 1242, n. 20 (N.D. Okla.,2007) (finding expert's reliance on the work of another expert acceptable where both experts were testifying and experts work is subject to entire range of attacks permitted by the rules).

**Plaintiffs' Amended Motion in Limine [Dkt. 303]**

Plaintiffs' Motion [Dkt. 303] is GRANTED in part and DENIED in part as set out below.

### 1. References to Subprime Mortgage Industry

Plaintiffs seek to exclude all testimony concerning the subprime mortgage industry, Plaintiffs' participation in that industry, Ameriquest Mortgage Corporation, investigations of Ameriquest or other mortgage companies, and settlements made by Ameriquest. Plaintiffs' motion is GRANTED in part and DENIED in part on this point.

The fact that Plaintiffs own Ameriquest, the name of the company, its financial condition, that the company is in the financial business, and the fact that Ameriquest incurred a substantial liability in the approximate amount of $300 million are matters that are relevant and are not of themselves so prejudicial that they should be excluded. However, reference to subprime lending and use of the term predatory lending is unfairly prejudicial. Reference to those terms and to government investigations or settlements related to the mortgage industry are excluded.

### 2. Indicia of Wealth

This subject has been addressed in connection with Defendants' Motion in Limine.

### 3. Marital History

This aspect of the motion is MOOT. The parties agree that testimony about this subject is not relevant.

### 4. Litigation Involving the Estate of Roland Arnall

Plaintiffs seek to exclude information concerning any claims or litigation involving the estate of Roland Arnall, including actions brought by his brother against the estate and all pleadings and briefs filed in that litigation. Plaintiffs' motion is GRANTED in part and DENIED in part on this point.

The fact of other litigation, details about that litigation, and the assertion that other litigation tends to demonstrate the propensity of Mr. Arnall to renege on handshake deals will be excluded. However, affidavits filed or testimony taken in other litigation may be used to impeach a witness.

### 5. Tax Audits

This aspect of the motion is MOOT. Defendants agree they will not attempt to introduce evidence of any tax audits, except for information concerning audits of Plaintiffs' oil and gas investments with Defendants.

### 6. Other Investments with Defendants

Plaintiffs seek to exclude evidence of any other investments with Defendants made by Plaintiffs or members of their families. Plaintiffs' motion is DENIED on this point.

The fact that Plaintiffs made other investments with Defendants, referred family members to Defendants for investments, and the timing of those investments may be relevant to Defendants' defense of Plaintiffs' fraud claim.

### 7. Political Contributions

This aspect of the motion is MOOT. Defendants will not seek to introduce information about this topic.

### 8. Ameriquest Document Discussing the Oil and Gas Industry

Plaintiffs seek to exclude a 2003 report by Ameriquest Capital Group concerning investment in the oil and gas industry. Plaintiffs' motion is DENIED on this point.

Regardless of whether there is evidence that the document was actually viewed or considered by the Plaintiffs, the document is relevant to Defendants' defense of the fraud claim in that it tends to demonstrate the type of information reasonably available to Plaintiffs and the reasonableness of Plaintiffs' reliance on representations allegedly made by Defendants.

### 9. PricewaterhouseCoopers' Handling of the Audit of Plaintiffs' Tax Returns

This aspect of the motion is MOOT. Defendants will not seek to introduce evidence on this topic.

### 10. RoDa's 2007 Overhead Agreement with Zenergy as Tortious Interference with Contract

This aspect of the motion is MOOT. Defendants will not seek to establish that the agreement constitutes a tortious interference with Palace's relationship or contracts with Zenergy.

### 11. Reference to Bonds Purportedly Held by Defendants as Collateral

Plaintiffs seek to exclude any reference to bonds purportedly held by Defendants for other investors as collateral for note obligations unless the bonds are introduced into

11

evidence. This aspect of the motion is MOOT. Defendants represent that they will not seek to introduce testimony concerning the bonds beyond the evidence that Mr. Arnall was offered the option to purchase such bonds which he did not do.

### 12. Reference to Discovery Disputes in This Litigation

This aspect of the motion is MOOT. The parties agree that discovery disputes are not to be part of the evidence in this case.

### 13. Claims of Privilege

### 14. Arguments Based on Statements Contained in a Reply Brief

Plaintiffs' motion is GRANTED on these points. Litigation conduct is not an appropriate topic for jury consideration. Therefore, the parties are precluded from introducing evidence about statements or arguments made in any brief or about Plaintiffs' claim of privilege for any document.

The court rejects Defendants' contention that the statements made in Plaintiffs' brief constitute a "judicial admission." "Judicial admissions are formal, deliberate declarations which a party or his attorney makes in a judicial proceeding for the purpose of dispensing with proof of formal matters or of facts about which there is no real dispute." *U.S. Energy Corp. v. Nukem, Inc.,* 400 F.3d 822, 833 n. 4 (10th Cir.2005) (quotation omitted).

## **PLAINTIFFS' MOTION IN LIMINE REGARDING TAX MATTERS [Dkt. 307]**

The parties agree that Plaintiffs' damages may not be reduced or offset by any tax benefit Plaintiffs obtained based on the transactions in this case. *Randal v. Loftsgaarden*, 478 U.S. 647, 106 S.Ct. 3143, 91 L.Ed.2d 525 (1986). Further, Plaintiffs are not seeking any damages based on any increase of taxes, penalties, or interest charged based on the

transactions in this case.[2] Thus, the tax effects of the transactions have no relevance to the issue of damages.

However, both sides seek to introduce evidence about the tax aspects of the transactions for other purposes. Plaintiffs seek to admit Defendants' representations regarding the tax benefits, how taxes and tax deductions may impact the calculation of the return on their investment, and the necessity of obtaining tax benefits to help defray the costs of note repayment. Further, Plaintiffs seek to admit evidence regarding: the IRS audit of Plaintiffs' tax returns, focusing on the tax deductions; the IRS position on such deductions; and any other audits or investigations of Defendants regarding such deductions. Defendants contend that the tax benefits are relevant to issues separate and apart from damages, including whether Defendants' representations regarding taxes were true or false or were material and also whether Plaintiffs justifiably relied on the representations. Defendants contend that the tax aspects were crucial to the transactions and the jury needs to have the tax information to have a full understanding of the case.

Since it is apparent that the tax aspects of the transactions will be a large part of the trial for both Plaintiffs and Defendants, the issue presented by this motion is whether the amounts of the tax benefits and tax deductions should be admitted into evidence. Plaintiffs contend that the amounts should not be admitted because the jury may reduce or offset Plaintiffs' damages based on those amounts despite any cautionary instruction telling them not to do so.

---

[2] Plaintiffs are seeking damages for the Defendants' alleged failure to properly structure investments in the North Sea from a tax perspective but his does not relate to the intangible drilling cost deductions at issue in this motion.

The court finds that in light of the large role the tax aspects played in the transactions, and the fact that both sides will be presenting evidence about the tax aspects, the amounts of the tax benefits and tax deductions are necessary for the jury to have a complete picture of this case. Moreover, the danger that the jury will not follow the court's instructions is slight where, as here, the Plaintiffs' damage claim is completely unrelated to the tax aspects of the transaction.

Additionally, the court finds that evidence which shows the IRS is auditing Plaintiffs' tax returns pertaining to Plaintiffs' deductions relating to the transactions and which shows the IRS is taking the position that the deductions are not proper is admissible. Such evidence is relevant to explain Plaintiffs' conduct in seeking to obtain record title to the properties and may be relevant to the truth or falsity of Defendants' representations. The admissibility of evidence of any audit or investigation of Defendants will be addressed if Plaintiffs give notice of intention to use such evidence as required elsewhere in this order.

Plaintiffs' motion is GRANTED only to the extent that no evidence, argument, or suggestion may be made that Plaintiffs' damages should be reduced or offset because of any tax benefit.

### PLAINTIFFS' MOTION TO EXCLUDE THE EXPERT REPORT AND TESTIMONY OF BUCK WILLIS [Dkt. 308]

Plaintiffs seek to exclude the testimony of Defendants' expert witness Buck Willis, an accountant whose proposed testimony will include opinions about the returns that RoDa received on its investments with Defendants and about RoDa's tax returns for 2002 through 2006. RoDa asserts that the testimony will not involve any expert analysis but will repeat

factual information contained in the tax returns and will involve information that could easily be included in a demonstrative exhibit.  Plaintiffs' motion is DENIED.

Plaintiffs have not demonstrated that it is not appropriate for an accountant to offer expert testimony on the subject of tax and accounting issues.  Plaintiffs have identified their own expert witness to offer similar testimony on those issues.  To the extent that Mr. Willis' testimony is redundant of other evidence in the case, the matter can be dealt with at the time of trial.

## **CONCLUSION**

Defendants' Amended Motions in Limine and to Preclude Expert Evidence [Dkt. 301] is GRANTED in part and DENIED in part; Plaintiffs' Amended Motion in Limine [Dkt. 303] is GRANTED in part and DENIED in part; Plaintiffs' Motion in Limine Regarding Tax Matters [Dkt. 307] is GRANTED in part and DENIED in part; and Plaintiffs' Motion to Exclude the Expert Report and Testimony of Buck Willis [Dkt. 308] is DENIED.

SO ORDERED this 29th day of June, 2009.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE