# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| RODA DRILLING COMPANY; RODA LLC; ROLAND ARNALL; DAWN ARNALL; and THE ROLAND AND DAWN ARNALL LIVING TRUST,<br><br>    Plaintiff,<br><br>vs.<br><br>RICHARD SIEGAL, an individual; BIPPY SIEGAL, an individual, PALACE EXPLORATION COMPANY, a corporation; PALACE OPERATING COMPANY, a corporation; B&R EXPLORATION CO., INC.; BISTATE OIL MANAGEMENT CORPORATION; and OIL AND GAS TITLE HOLDING CORPORATION,<br><br>    Defendant. | Case No. 07-CV-400-GFK-FHM |

## **OPINION AND ORDER**

Plaintiffs' Motion to Reopen Action for Enforcement of Settlement Agreement and for Order of Referral to Magistrate Judge [Dkt. 471] has been fully briefed and a hearing has been held on the matter. This Opinion and Order resolves the question of whether the Settlement Agreement requires the Palace Parties to transfer an interest known as the Bakken Override to the RoDa Parties.[1]

## **Background**

The parties entered into a Settlement Agreement. [Dkt. 475-1; SEALED]. Pursuant to the parties' stipulation, the Court entered an Administrative Closure Order which provided that in the event of a dispute under the Settlement Agreement, on motion the

---

[1] The parties have reported that the other issue raised by Plaintiffs' motion has been resolved.

action would be reopened and the dispute referred to the Magistrate Judge for resolution. [Dkt. 470]. A dispute has arisen and the parties agree that it is appropriate for the undersigned United States Magistrate Judge to resolve the matter by Opinion and Order rather than by Report and Recommendation.

## Settlement Agreement Terms

The following provisions of the Settlement Agreement are at issue:

> 4(i) The Palace Parties further agree to transfer, assign and deliver to the RoDa Parties all of the Palace Parties' interests in those interests, properties and assets set forth in subparagraphs A-G below, which were acquired for the joint account of the RoDa Parties and the Palace Parties. The parties agree that the Palace Parties' interests in those interests, properties and assets have a value as of July 1, 2009 as set forth in subparagraphs A-G below. The values for the Palace Parties' interests in the interests, properties and assets referenced in Subparagraphs A, B, and D, below, are based on the Palace Parties owning the interests/acreage reflected on Exhibit B-1 hereto . . . .
>
> \*   \*   \*
>
> In the event the Palace Parties own lesser interests than [is] reflected on Exhibit[] B-1 . . . then the Palace Parties shall pay the RoDa Parties upon demand an amount in cash equal to such value differential. In the event the Palace Parties own greater interests than [is] reflected on Exhibit[] B-1 . . . such that the values herein are understated, then the RoDa Parties shall credit such excess amount against the cash payments to be made by the Palace Parties under paragraph 9 of this Agreement.
>
> > A.  The Palace Parties' interests in all exploratory acreage wherever located . . .
> >
> > \*   \*   \*
> >
> > D.  The Palace Parties' interests in all "held-by-production" acreage in North Dakota . . .

[Dkt. 475-1, pp. 6-8; SEALED].

## The Disputed Property

On October 24, 2005, the Palace Parties (hereafter Palace) made assignments of oil, gas, and mineral leases to Brigham Oil & Gas, L.P. (Brigham). The leases covered the Bakken Shale formation[2] in lands located in North Dakota and particularly described in an exhibit annexed to the assignments. [Dkt. 471-1, pp.3-11]. The leases so assigned reserved to Palace an Overriding Royalty, which is a right to receive a portion of prospective oil and gas revenue from those leases. [Dkt. 471-1, pp. 3, 8]. The parties disagree whether the above-quoted provisions of the Settlement Agreement require Palace to transfer the Overriding Royalty in the Bakken Shale formation (hereafter Bakken Override) to the RoDa Parties (hereafter RoDa).

## The Parties' Arguments

The parties agree that the Settlement Agreement is not ambiguous and should be enforced according to its specific terms.

RoDa argues that the Bakken Override is included within Palace's obligation under paragraph 4(i) of the Settlement Agreement to "transfer, assign and deliver to the RoDa Parties **all** of the Palace Parties' interests, in those interests, properties and assets" which are exploratory acreage or held-by-production acreage in North Dakota.[3]

---

[2] According to the Assignment, the Bakken Shale Formation refers to formations underlying the described lands at a particularly described subsea depth. [Dkt. 471-1, pp. 3, 8]. According to Palace, the Bakken Override encompasses an interest in over 40,000 acres. [Dkt. 477, p. 6].

[3] Paragraph 4(i) of the Settlement Agreement seems to require transfer of only those interests of Palace that were "acquired for the joint account" of RoDa and Palace. [Dkt. 475-2, p. 6; SEALED]. Palace has not asserted that the Bakken Override does not qualify as a property or interest acquired for the Parties' joint account.

Palace argues that the Settlement Agreement contains no provision obligating Palace to transfer the Bakken Override. Palace contends that "[t]he Settlement Agreement provides only for the transfer of consideration of an agreed and specified value, comprised of specific cash items and specific property items that are listed and that have an agreed value," [Dkt. 477, p. 7], and therefore "the Settlement Agreement provides for the transfer of *only those properties listed* in the agreement." *Id.* (emphasis in original). According to Palace, the obligation to transfer is limited to those interests listed in Exhibit B-1.

Palace notes that the Bakken Override is not included among the interests listed in Exhibit B-1, that each of the interests identified on Exhibit B-1 is a working interest, and none is an overriding royalty interest. Palace concludes that the omission of the Bakken Override from Exhibit B-1 demonstrates an intention to transfer only those working interests listed in that exhibit. According to Palace, omitting mention of the Bakken Override is no mere oversight because elsewhere in the Settlement Agreement when the parties meant to address overriding royalties, they were expressly identified.

Palace further argues that an overriding royalty interest is, by definition, neither an exploratory acreage nor an acreage held-by-production and therefore cannot be encompassed by the terminology employed by the parties to describe the interests that Palace must transfer. Palace also points out that while the parties included provisions in the Settlement Agreement to make cash adjustments for those instances where Palace owns a lesser or greater interest than what is listed on Exhibit B-1, there is no provision requiring an adjustment where a particular asset, like the Bakken Override, is omitted entirely.

## Analysis

A settlement agreement is a contract. *Russell v. Bd. of Co. Com'rs of Carter Co.*, 1 P.3d 442, 443 (Okla. Civ. App. 2000). Under Oklahoma law, which the parties agree is applicable to this dispute, when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone. 15 Okla. Stat. §155. The undersigned finds that the Settlement Agreement is unambiguous. That is, the language is not susceptible of more than one meaning. Therefore the contract terms must be ascertained from the language the parties used in the Settlement Agreement. *Bank of Oklahoma v. Red Arrow Marina Sales & Service, Inc.*, 224 P.3d 685, 699 (Okla. 2009) (Where a contract is compete in itself and, as viewed in its entirety, contains clear and explicit language leaving it free of ambiguity, its language is the only legitimate evidence of what the parties intended).

The undersigned finds that ¶ 4(i) of the Settlement Agreement obligates Palace to transfer the Bakken Override to Roda. That obligation is stated by the language of the Settlement Agreement where Palace agrees "to transfer, assign and deliver to the RoDa Parties **all** of the Palace Parties interests in those interests, properties and assets" in exploratory and held-by-production acreage in North Dakota. [Dkt. 475-2; ¶ 4(i); SEALED][emphasis supplied]. The Court rejects Palace's argument that an overriding interest is somehow excepted from the broad term "all." The word "all" encompasses every interest Palace possesses in the particular land that is either exploratory or held-by-production acreage in North Dakota. The parties' use of the word "all" and the absence of any provision specifically excepting the Bakken Override from Palace's obligation to

5

transfer evinces an intention that the Bakken Override be transferred. Any other interpretation places an unnatural construction on the language employed by the parties.

Said differently, the Court reads the Settlement Agreement as requiring Palace to transfer all of Palace's interests in the land identified, which includes exploratory and held-by-production acreage in North Dakota. Notably, Palace has not questioned that the particular land to which the Bakken Override attaches is property that is either exploratory or held-by-production acreage in North Dakota. Therefore, in view of the language requiring Palace to transfer of **all** interests in those properties, and in view of the absence of any argument that the Bakken Override does not involve the land that is described as exploratory or held-by-production acreage, there is no basis for Palace to withhold transfer of the Bakken Override under the terms of the Settlement Agreement.

The parties' mention of the term "overriding royalties" elsewhere in the Settlement Agreement does not influence the interpretation of the words used in the transfer provision in ¶ 4(i). The other references to "overriding royalties" do not pertain to the transfer provision of ¶ 4(i).

The Court rejects Palace's contention that "the Settlement Agreement provides for the transfer of *only those properties listed* in the agreement." [Dkt. 477, p. 7] (emphasis in original). The Settlement Agreement does not contain such a provision. Palace's contention is not grounded in the specific language of the Settlement Agreement. Instead, Palace seeks to imply a limitation on Palace's obligation to transfer through the provisions of the Settlement Agreement that address the value the parties assigned to Palace's interests. However, the Settlement Agreement does not contain any language linking the obligation to transfer to the value.

6

The list of properties on Exhibit B-1 relates to the agreed values of Palace's interests in exploratory and held-by-production acreage in North Dakota. The values in turn relate to the total settlement amount and Palace's credit against that amount for the transfer of the interests. The list does not address, limit, or impact Palace's obligation to transfer. The obligation to transfer is wholly contained in the Settlement Agreement language where Palace agrees "to transfer, assign and deliver to the RoDa Parties **all** of the Palace Parties interests in those interests, properties and assets" in exploratory and held-by-production acreage in North Dakota. [Dkt. 475-2; ¶ 4(i); SEALED][emphasis supplied].

That the list contained in Exhibit B-1 was not intended to establish the complete list of the "only" properties Palace was obligated to transfer is supported by the Settlement Agreement's explicit recognition that the list may be inaccurate or incomplete. The Settlement Agreement contains provisions for adjusting the values in light of such inaccuracies. In view of the Settlement Agreement's acknowledgment that the list of properties listed in Exhibit B-1 may not be accurate, Palace's attempt to cast the Exhibit B-1 list as the finite expression of the properties to be transferred must fail as being contrary to the language of the Settlement Agreement.

Palace's observation that Exhibit B-1 lists only working interests while the Bakken Override is an overriding royalty interest does not change the analysis. The fact remains that there is nothing within the Settlement Agreement that specifies Palace's obligation to transfer all interests is dependent on, or related to, the accuracy or completeness of the property listing in Exhibit B-1.

Likewise, Palace's argument that the Settlement Agreement contains no mechanism to adjust the values to account for the transfer of the Bakken Override has no effect on the

interpretation of the language used to specify what interests Palace is required to transfer. As previously stated, Palace's obligation to transfer is explicitly established by the language of the Settlement Agreement. The issue of whether the values need to be adjusted to account for the transfer of the Bakken Override is not before the Court.

### **Conclusion**

Plaintiffs' Motion to Reopen Action for Enforcement of Settlement Agreement and for Order of Referral to Magistrate Judge [Dkt. 471] is GRANTED.

The Palace Parties are HEREBY ORDERED to assign to the RoDa Parties all of the Palace Parties' remaining interest in the Bakken Override, effective as of July 1, 2009, and to turn over to the RoDa Parties any proceeds of production on or after July 1, 2009 that are attributable to that overriding royalty interest.

SO ORDERED this 24th day of September, 2010.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE